IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

PRENTICE ROBINSON,

    Petitioner,

v().                                                   No. 1:18-cv-1066-JDB-jay
                                                     Re: 1:15-cr-10067-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING § 2255 AMENDED PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Prentice Robinson,[1] has filed a pro se amended motion to vacate, set aside, or correct his sentence (the "Amended Petition) pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 4.)[2] For the following reasons, the Amended Petition is DENIED.

BACKGROUND

In August 2015, a federal grand jury for the Western District of Tennessee returned a one-count indictment charging Robinson with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (*United States v. Robinson*, No. 1:15-cr-10067-JDB-1 (W.D. Tenn.) ("No. 1:15-cr-10067-JDB-1"), D.E. 2.) Through his defense counsel, A. Russell Larson, the Defendant filed a motion to suppress the firearm. (*Id.*, D.E. 25.) The Court conducted a hearing on the motion on December 10, 2015, and denied relief. (*Id.*, D.E. 33.) Robinson proceeded to a jury trial, at which the following evidence was adduced:

---

[1]The Court will refer to Robinson as the "Defendant" in its discussion of his criminal case.

[2]Unless otherwise noted, record citations are to documents filed in the present case.

> Just after midnight on March 2, 2015, Robinson's car was stopped by Jackson, Tennessee Police Officer Mike Arnold and his partner for a seatbelt violation. The officers approached the car and Arnold obtained identification from the passenger, Kevin Douglas. When a criminal background check revealed that Douglas was on parole for a state drug conviction, Arnold asked both men to exit the car so he could search it—Douglas was subject to searches of his person and vehicle as a condition of his parole. According to Arnold, Robinson said that all of the clothes in the back seat were his. Among those clothes was a jacket, and in the jacket's pocket was a .38 caliber handgun. Arnold and his partner arrested the men and charged Robinson with being a felon in possession of a firearm. The gun and ammunition were tested but no fingerprints were found.
>
> Randall Hendrix, an employee of the Tennessee Department of Corrections, testified that Robinson visited his office the next day. Robinson asked Hendrix to inform Douglas's probation officer that the gun was his and that Douglas had no knowledge of its presence in the car.
>
> Dontavious Ellison, a friend of Robinson's since childhood and military veteran, testified that he had loaned the car to Robinson and that the jacket and gun were his. He testified that he knew Robinson was a convicted felon but did not know that his record made it illegal to possess a weapon, so he did not tell Robinson about the gun. According to Ellison, he learned of the arrest a week after it happened, called Robinson's mother, and then informed Robinson's lawyer that the gun was his. Ellison did not communicate this to the police.

(*Id.*, D.E. 71 at PageID 406-07.) The jury returned a guilty verdict. (*Id.*, D.E. 40.)

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). The PSR calculated a base offense level of 24 pursuant to § 2K2.1(a)(2) of the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). (PSR ¶ 11.) Section 2K2.1 provides sentencing guidance for federal firearms and ammunition offenses. *See* U.S.S.G. § 2K2.1. Subsection (a)(2) advises an enhancement to a defendant's base offense level "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."

2

U.S.S.G. § 2K2.1(a)(2). The PSR advised that the enhancement applied in Robinson's case because the firearm offense of which he was convicted was committed subsequent to his sustaining one Tennessee conviction for the sale of cocaine in violation of Tennessee Code Annotated § 39-17-417(a)(3) and a federal conviction for possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).[3]  (PSR ¶¶ 11, 28-29.)  No further adjustments were applied to the offense level. "Based upon a total offense level of 24 and a criminal history category of VI, the guideline imprisonment range [was calculated to be] 100 months to 125 months." (*Id.* ¶ 73 (bolding omitted).)

At a hearing on July 19, 2016, the undersigned sentenced Robinson to 100 months' imprisonment and three years of supervised release. (D.E. 59.) Attorney Larson continued his representation on direct appeal, arguing that the evidence was insufficient to convict the Defendant. The Sixth Circuit rejected the argument and affirmed the conviction. (No. 1:15-cr-10067-JDB-1, D.E. 71.)

## DISCUSSION

The inmate initiated this case on April 16, 2018. In compliance with the Court's order that he refile his claims on this district's § 2255 form (D.E. 3), he submitted the Amended Petition on May 3, 2018 (D.E. 4). In Claim 1 thereof Robinson posits that counsel rendered ineffective

---

[3] Although the probation office initially reported that Robinson's Tennessee aggravated burglary conviction was a qualifying offense under § 2K2.1(a)(2), and also under the Armed Career Criminal Act, 18 U.S.C. § 924(e), it revised the report to reflect its opinion that the offense "is no longer considered" a qualifying offense after the United States Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). (PSR, Second Addendum at 1.) The Sixth Circuit's later decision in *United States v. Stitt*, 860 F.3d 854, 858 (6th Cir. 2017) (en banc), *rev'd*, 139 S. Ct. 399 (2018), supported that result, but the decision was reversed by the Supreme Court. *See Stitt*, 139 S. Ct. at 399.

3

assistance at sentencing by failing to argue that his Tennessee conviction for sale of cocaine could not be used to qualify him for the § 2K2.1(a)(2) offense-level enhancement. He asserts in Claim 2 that counsel was ineffective at the suppression hearing and on appeal by not contending that he had an expectation of privacy in the car he was driving. In Claim 3, the inmate maintains that counsel provided ineffective assistance by not submitting a supplemental jury instruction. The Government responded to the Amended Petition, arguing that all three claims are belied by the record and without merit. (D.E. 10.) Petitioner filed a reply, in which he reiterates that he is entitled to relief. (D.E. 15.)

I. <u>Legal Standards.</u>

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a §

4

2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,

5

466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II. Claim 1.

Petitioner argues that counsel was ineffective at sentencing by failing to assert that his Tennessee conviction for sale of cocaine in violation of § 39-17-417(a)(3) was not a controlled substance offense under the Guidelines. He submits that, under *Mathis*, the drug statute "offers an []alternative factual means of committing a single offense[] and criminalizes a broader range of conduct than the []controlled substance offenses[] described in U.S.S.G. § 4B1.2(b)[.]" (D.E. 4-1 at PageID 35.) He insists that, but for counsel's conduct, he would not have qualified for the § 2K2.1(a)(2) enhancement.[4]

The Respondent maintains that the claim is without merit. The Government's argument is well-taken.[5]

The Guidelines define a "controlled substance offense" as

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

---

[4]Robinson also contends that he is entitled to relief under the Fifth Circuit's decision in *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016). The argument is unavailing because "*Hinkle* analy[z]ed a Texas statute that is readily distinguishable from the Tennessee statute under which [he] was convicted, and therefore does not assist his cause." *See Miller v. Warden, FCI Ashland*, Civil No. CV 0:19-15-HRW, 2020 WL 3421762, at *1 n.1 (E.D. Ky. June 22, 2020); *see also Myers v. United States*, No. 2:17-cv-02128-SHM-tmp, D.E. 16 at PageID 137 (W.D. Tenn.) (*Hinkle* was inapposite to petitioner's claim that his Tennessee drug conviction under § 39-17-417(a)(4) was not a controlled substance offense).

[5]An evidentiary hearing is not warranted because there is no factual dispute as to any of the claims.

U.S.S.G. § 4B1.2(b).[6]

To determine if a conviction constitutes a controlled substance offense, a court must "apply the . . . 'categorical' approach,'" which focuses on the statute under which the petitioner was convicted, rather than his conduct. *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir.) (citing *Mathis*, 136 S. Ct. at 2248-49; *United States v. House*, 872 F.3d 748, 753 (6th 2017)), *cert. denied*, 139 S. Ct. 608 (2018). If the statute is "divisible," meaning it describes multiple offenses, the court may "employ the 'modified categorical approach.'" *House*, 872 F.3d at 753 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257). The Supreme Court in *Mathis* clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 136 S. Ct. at 2249. If the statute lists alternative means, then it is "indivisible" and resort to the limited class of documents is prohibited. *Id.* at 2248.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a 'controlled substance offense.'" *Pittman*, 736 F. App'x at 554. If the elements do not match, the prior conviction is not a controlled substance offense. *Id.* at 555.

---

[6]Application Note 1 to § 2k2.1 specifies that "'controlled substance offense' has the meaning given that term in § 4B1.2(b)[.]" U.S.S.G. § 2K2.1, comment. n.1.

7

In assessing whether an attorney was ineffective for failing to make a particular argument at sentencing, a district court must "look[] back to when [it] sentenced" the defendant to determine what law prevailed at the time. *Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (citing *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018)), *cert. denied*, 140 S. Ct. 2786 (2020); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). If caselaw held "the opposite" of the argument foregone by counsel, *Bullard*, 937 F.3d at 661, or if the law was "unclear," *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001), counsel was not ineffective for failing to make the argument. *See Bullard*, 937 F.3d at 661 (counsel not ineffective for failing to make an argument at sentencing where circuit precedent at the time held to the contrary); *Lott*, 261 F.3d at 609 (counsel did not render ineffective assistance by failing to present an argument where the law was unclear at the time). As the Sixth Circuit has "repeatedly held[,] counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider*, 908 F.3d at 192 (citing *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010); *United States v. Freeman*, 679 F. App'x 450, 453 (6th Cir. 2017)).

In the present matter, Petitioner cannot show that counsel was ineffective for failing to argue that his Tennessee conviction under § 39-17-417(a)(3) for sale of cocaine was not a controlled substance offense. When Robinson was sentenced in July 2016, Sixth Circuit precedent held that § 39-17-417 categorically described controlled substance offenses. *See United States v. Douglas*, 563 F. App'x 371, 377-78 (6th Cir. 2014). Indeed, one year later and *post*-Mathis, the

8

Sixth Circuit, in *United States v. Alexander* 686 F. App'x 326 (6th Cir. 2017) (per curiam), reaffirmed "that any violation of § 39-17-417 is a controlled substance offense." [7] *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (citing *Alexander*, 686 F. App'x at 327-28), *recons. denied*, 929 F.3d 317 (6th Cir. 2019).  Counsel therefore did not perform deficiently by failing to raise the argument and Petitioner cannot be said to have been prejudiced by counsel's conduct.  *See, e.g.*, *Myers*, No. 2:17-cv-02128-SHM-tmp, D.E. 16 at PageID 137-38 (where, at time of petitioner's 2016 sentencing, circuit precedent held that any crime under § 39-17-417(a) was a controlled substance offense, petitioner's claim that his attorney was ineffective for failing to argue that his Tennessee drug convictions were not controlled substance offenses was without merit).  Claim 1 is therefore DENIED.

III.     Claim 2.

Robinson submits that counsel rendered ineffective assistance by "fail[ing] to preserve the issue of [his] 'reasonable expectation of privacy' in being the driver of the car, although the passenger could be searched at any time, due to [the] condition[s] of his (the passenger's[)] parole." (D.E. 4 at PageID 25.)  He argues that the officers who searched the car he was driving "mistakingly [sic] assumed that [the passenger's] parole status allowed them free reign [sic] to search the vehicle."  (D.E. 4-1 at PageID 41.)  He claims that "counsel's failure to inform this Court of [his] right to expectation of privacy in searching the car that he'd borrowed from his

---

[7] In 2019, on the parties' stipulation that delivery under § 39-17-417(a)(2) includes attempted delivery, the Sixth Circuit held that the crime is not a controlled substance offense. *See Havis*, 927 F.3d at 387 (the Guidelines' definition of a controlled substance offense does not include attempt crimes).

9

friend . . . was a failure to effectively represent" him, in both the district court and on appeal. (*Id.*) Respondent argues the claim is without merit.[8] The Court agrees.

At the hearing on the motion to suppress, counsel did aver that the Defendant had an expectation of privacy in the vehicle. Counsel pressed the fact that Robinson exercised personal control of the car because he had borrowed it from a friend and was driving it at the time of the traffic stop. Attorney Larson also elicited testimony from the officers that the position of Petitioner and his passenger once they were outside the vehicle posed no threat to the officers or people in the vicinity. Counsel therefore insisted that Robinson's Fourth Amendment right against unreasonable search of the vehicle had been violated when the officers went back to the empty car and seized the jacket from the back seat. The Court fully understood counsel's position—that the Defendant retained, in the Court's words, a "zone of privacy" in the interior of the vehicle, the invasion of which could not be justified by either the passenger-parolee's prior consent to searches or the circumstances attendant to the stop. (No. 1:15-cr-10067-JDB-1, D.E. 35 at PageID 172.) Although the argument was ultimately unsuccessful, counsel presented it for the Court's consideration. Larson's conduct was therefore not deficient.

Petitioner's assertion that his attorney was ineffective by failing to appeal the adverse ruling is also without merit. *Strickland*'s two-part test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). A petitioner meets the

---

[8]The Government construes the Amended Petition as presenting both a Fourth Amendment claim and a related ineffective-assistance claim. The Court does not read the Amended Petition as asserting the former. But even if a Fourth Amendment claim were before the Court, it would not be cognizable in this § 2255 proceeding because Petitioner had a "full and fair" opportunity to litigate the issue in his criminal case. *See Stone v. Powell*, 428 U.S. 465, 494 (1976)).

10

deficient-performance prong by showing that "his appellate counsel made an objectively unreasonable decision by choosing to raise other issues instead of" the challenged issue, "meaning [the challenged] issue 'was clearly stronger than issues that counsel did present.'" *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Robbins*, 528 U.S. at 285, 288). The prejudice prong requires a petitioner to "demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise th[e] issue on appeal, 'he would have prevailed.'" *Id.* (quoting *Robbins,* 528 U.S. at 285).

In Robinson's appeal, his attorney chose to argue that the evidence was insufficient to convict him of being a felon in possession of a firearm. Specifically, counsel maintained that

> [n]o rational trier of fact could have found Mr. Robinson . . . guilty of possessing a firearm where the testimony and evidence at Trial clearly showed that Mr. Robinson did not know that the weapon was in his car which was being shared by Kevin Douglas. The testimony clearly showed that the gun which belonged to Dontavious Ellison was in the pocket of a jacket in the back seat of a car borrowed by Mr. Robinson. The evidence was abundantly clear that the weapon was equally accessible to Mr. Robinson and Kevin Douglas and that Mr. Ellison had not advised either of the occupants of the car that the weapon existed and was in the pocket of the jacket.
>
> The evidence is equally convincing that at no time did Mr. Robinson ever make any effort to hide or reach for the weapon when contacted by Officers of the Jackson, Tennessee Police Department.
>
> Given the record in this case, the evidence was wholly insufficient to establish actual, constructive or joint possession of the handgun on Mr. Robinson's part. For this reason, Mr. Robinson respectfully requests this Court to reverse his conviction or remand this matter for further proceedings consistent with the evidence as presented at Trial.

*Robinson*, No. 16-6188, D.E. 20 at 16 (6th Cir.).

Petitioner has not demonstrated that a Fourth Amendment assertion that he retained a zone of privacy in the vehicle was clearly stronger than the evidence-sufficiency argument. Indeed, at

11

the time of his direct appeal, there did not appear to be a Sixth Circuit case on-point favoring that stance. There were also cases that, by analogy, were unfavorable. *See, e.g.*, *United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016) ("[U]nder the Fourth Amendment, a probationer whose probation order contains a search condition may be subjected to a search in the absence of reasonable suspicion."); *United States v. Payne*, 588 F. App'x 427, 434 (6th Cir. 2014) (in felon-in-possession case, non-parolee defendant's Fourth Amendment rights not violated when officers seized his firearms during a parole search of his home; officers had probable cause to believe that the parolee lived at the defendant's home and had reasonable suspicion that parolee violated her parole terms). Claim 2 is DENIED.

### IV.     Claim 3.

Movant submits that his lawyer was ineffective by failing to request "an amended jury instruction pertaining to the crime of 'constructive possession.'" (D.E. 4 at PageID 27.) He insists that the instructions given to the jury "failed to establish the mens rea requirement that [he] **knew** that the firearm was in the car." (D.E. 4-1 at PageID 43.) Therefore, he argues, counsel should have requested a supplemental instruction to "highlight the essential element of 'knowledge'[] where circumstances pertaining to this 'constructive possession' charge were not ordinary." (D.E. 4 at PageID 27.) In support, he avers that, unlike the jury instructions upheld in *United States v. Harris*, 600 F. App'x 985, 991 (6th Cir. 2015), the instructions in his trial did not convey that knowledge could not be inferred by the mere fact that he was driving the car. Respondent maintains that counsel did not perform deficiently by failing to seek a supplemental instruction because the instructions that were given followed the Sixth Circuit pattern instructions and

12

adequately informed the jury about constructive possession. The Government's position is well-taken.

"A conviction for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) requires proof of three elements: (1) the defendant had a prior felony conviction; (2) he knowingly possessed a firearm; and (3) the firearm traveled in or affected interstate commerce."[9] *Harris*, 600 F. App'x at 987 (citing *United States v. Nelson,* 725 F.3d 615, 619 (6th Cir. 2013). "The possession element may be satisfied through either actual or constructive possession." *Id.* (citing *United States v. Walker,* 734 F.3d 451, 455 (6th Cir. 2013)). "Actual possession exists when an individual knowingly has direct physical control over a thing at a given time." *Id.* (quoting *United States v. Hunter,* 558 F.3d 495, 504 (6th Cir. 2009)). "A person has constructive possession if he 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (quoting *Walker,* 734 F.3d at 455) (internal quotation marks omitted)).

To prevail on a claim that counsel was ineffective for failing to introduce particular jury instructions, a petitioner must "show that (1) the jury instructions given were inadequate, (2) counsel's failure to object was objectively unreasonable, and (3) different instructions would have so likely changed the outcome of the trial that the result is unreliable." *Jacobs v. Sherman*, 301 F. Appx. 463, 466 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687). In determining whether a jury instruction is adequate, a court must view the instructions "as a whole in order to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a

---

[9]Robinson stipulated at trial that the felony and interstate commerce elements were met.

sound explanation of the applicable law to aid the jury in reaching its decision." *United States v. Salisbury*, 983 F.2d 1369, 1376 (6th Cir. 1993) (citing *Kitchen v. Chippewa Valley Schs.,* 825 F.2d 1004, 1010-11 (6th Cir. 1987); *United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir. 1984)).

In *Harris*, the defendant was convicted of being a felon in possession of a firearm. *Harris*, 600 F. App'x at 986. The firearm was discovered in a car owned by the defendant and driven by him at the time of the traffic stop. *Id.* at 986-87. The defendant's wife testified at trial that "she and [the defendant] rarely drove the [vehicle]; it had been in and out of repair shops and had otherwise spent the last three years in their yard in 'not the best' neighborhood in Detroit." *Id.* In its instruction on constructive possession, the district court explained to the jury that

> [t]he government must prove that the defendant had the right to exercise physical control over a firearm, and knew that he had this right, and that he intended to exercise physical control over it at some time, . . . either directly or through other persons. . . . [U]nderstand that just being present where something is located does not equal possession. The Government must prove that the defendant had actual or constructive possession of a firearm, and knew that he did, for you to find him guilty of the crime. . . . The term "knowingly" means voluntarily and intentionally, and not because of mistake or accident.

*Id.* at 990 (first alteration supplied). "The [district] court declined to supplement its instruction on constructive possession with Harris's requested additional instruction that mere ownership or possession of a vehicle was insufficient to prove constructive possession." *Id.* On appeal, the defendant maintained that the court erred by refusing the supplemental instruction. *Id.*

The Sixth Circuit rejected the argument, holding that, "[a]lthough the[] instructions [did] not specifically mention ownership of a vehicle as a consideration, they substantially cover[ed] the requested instruction." *Id.* at 990-91. "In particular, they allowed the jury to decide whether to accept or reject Harris's theory . . . that ownership of the [vehicle] was not alone sufficient[,]" by

14

making it "clear that the jury should only find possession if the circumstances demonstrated Harris voluntarily or intentionally had control over—or the right to control—at least one of the guns." *Id.*

At Robinson's trial, the Court's instruction on the element of knowingly possessing a firearm, which was taken verbatim from the Sixth Circuit's pattern instruction,[10] read as follows:

> To establish actual possession, the government must prove that the defendant had direct, physical control over the firearm, and knew that he had control of it. To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the firearm, and *knew that he had this right, and that he intended to exercise physical control over firearm at some time, either directly or through other persons.*
>
> \* \* \*
>
> *But understand that just being present where something is located does not equal possession.* The government must prove that the defendant had actual or constructive possession of the firearm, *and knew that he did*, for you to find him guilty of this crime. This, of course, is all for you to decide.

(No. 1:15-cr-10067-JDB-1, D.E. 38 at PageID 204 (emphasis added).) The Court also instructed the jury that "[t]he term 'knowingly' means voluntarily and intentionally, and not because of mistake or accident." (*Id.*, D.E. 38 at PageID 205.)

As in *Harris*, the instructions in Robinson's case conveyed to the jury that, if the Defendant did not know the gun was in the car, he could not have knowingly possessed it. More to the point, knowledge of the existence of a firearm is implicit in the Court's instruction that a person constructively possesses a firearm where he knows he has a right to exercise physical control over it and intends to exercise that control at some time. The instructions in Petitioner's case therefore

---

[10]*See* Sixth Circuit Criminal Pattern Jury Instructions, § 2.10 *Actual and Constructive Possession*.

15

made clear that, absent his knowledge of the gun's presence in the car, he could not have voluntarily and intentionally possessed it. And even if, somehow, all of that was not obvious, the jury was also explicitly admonished that "just being present where something is located does not equal possession." (*Id.*, D.E. 38 at PageID 204.)

Because the instructions were not inadequate, counsel did not render ineffective assistance by failing to submit a supplemental instruction. Claim 3 is without merit and is DENIED.

For all of these reasons, the Amended Petition is DENIED. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[11]

IT IS SO ORDERED this 11th day of August 2021.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE

---

[11] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.